**ONCOR ELECTRIC DELIVERY COMPANY LLC, Petitioner,**

v.

**DALLAS AREA RAPID TRANSIT and Fort Worth Transportation Authority, Respondents.**

No. 11–0079.

Supreme Court of Texas.

Argued Jan. 11, 2012.

Decided June 22, 2012.

---

James C. Ho, Lawrence J.C. VanDyke, Jason Cimma McKenney, Gibson Dunn & Crutcher LLP, Dallas, Jeb Loveless, Joann N. Wilkins, David M. Weaver, Burford & Ryburn LLP, Fort Worth, TX, for Oncor Electric Delivery Company LLC.

Patricia Merian Reed, Hyattye O. Simmons, Dallas Area Rapid Transit, Legal Department, Joycell Marie Hollins, DART, Legal Department, Sr. Assistant General

Counsel, JG, Dallas, TX, for Respondent Dallas Area Rapid Transit.

Sylvia Marie Hartless, General Counsel, Fort Worth, TX, for Respondent Fort Worth Transit Transportation Authority.

David C. Duggins, Duggins Wren Mann & Romero LLP, Austin, TX, for Amicus Curiae Entergy Texas Inc.

Chauncey Marcus Lane, Duggins Wren Mann & Romero LLP, Austin, TX, for Amicus Curiae Texas Pipeline Association.

Stephen K. Carroll, Fulbright & Jaworski L.L.P., Houston, TX, for Amicus curiae Transcanada Keystone Pipeline L.P.

Pamela Stanton Baron, Attorney at Law, Austin, TX, for Amicus Curiae Centerpoint Energy Houston Electric, LLC.

Richard P. Noland, Sutherland Asbill & Brennan LLP, Austin, TX, for Amicus Curiae Sharyland Utilities, L.P.

David C. Duggins, Duggins Wren Mann & Romero LLP, Austin, TX, for Amicus Curiae Electric Transmission Texas LLC, AEP Texas Central Company.

J. Brett Busby, Bracewell & Giuliani, LLP, Houston, Kelly J. Shackelford, Liberty Legal Institute, Plano, TX, for Amicus Curiae Liberty Institute.

Justice HECHT delivered the opinion of the Court.

An electric utility sued two regional public transportation authorities, which are governmental entities, to condemn an easement across their land for use in constructing a transmission line approved by the Public Utility Commission ("PUC"). A divided court of appeals upheld the authorities' assertion of governmental immunity and dismissed the case.[1] While the utility's petition for review was pending in this Court, the Legislature enacted House Bill 971, which extends an electric corporation's power of eminent domain to include the acquisition of "all public land, except land owned by the state, on which the [PUC] has approved the construction of [a transmission] line."[2] The utility asks that we vacate the court of appeals' judgment and remand the case to the trial court to consider the effect of the new statute. The authorities object that the statute is inapplicable. We agree with the utility.

## I

Oncor Electric Delivery Company LLC owns and operates the largest electric distribution and transmission system in Texas, delivering power over some 117,000 miles of lines to about three million homes and businesses. Oncor applied to the PUC for approval to construct a new transmission line serving Dallas County.[3] The PUC considered several different routes, weighing the costs to consumers and the impact on local communities and property owners. After lengthy proceedings, it approved one that crossed over a public commuter rail line between Dallas and Fort Worth that is jointly owned and operated by Dallas Area Rapid Transit ("DART") and the Fort Worth Transportation Authority (collectively, "the Authorities"), both regional public transportation authorities under Texas law.[4] All interest-

1. 331 S.W.3d 91 (Tex.App.-Dallas 2010).

2. Act of May 27, 2011, 82nd Leg., R.S., ch. 949, § 1, 2011 Tex. Gen. Laws 2400, 2400 [hereinafter "House Bill 971"], codified as Tex. Util. Code § 37.053(d).

3. See Tex. Util.Code §§ 37.051–37.061 (detailing the requirements for applying for a certificate of convenience and necessity from the PUC).

4. A regional transportation authority "is a public political entity and corporate body [that] has perpetual succession[ ] and ... exercises public and essential governmental functions." Tex. Transp. Code § 452.052(a).

ed parties were notified of Oncor's application,[5] and many landowners participated in the PUC proceedings. The Authorities did not.

Oncor attempted to negotiate with the Authorities for an aerial easement and right-of-way over approximately 0.37 acres of their rail line. Although Oncor and its predecessor had successfully negotiated similar rights-of-way with DART hundreds of times before, this time the parties could not reach an agreement,[6] and Oncor sued to condemn the easement. Oncor invoked Section 181.004 of the Utilities Code, which states:

A gas or electric corporation has the right and power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation.[7]

The Authorities are governmental entities[8] and pleaded immunity from suit. The trial court denied their plea and refused to dismiss the case, and the Authori-

ties appealed.[9] A divided court of appeals held that governmental entities are immune from suits for condemnation,[10] that Section 181.004 does not waive governmental immunity,[11] and that the PUC's authority to approve transmission lines does not preempt immunity.[12] Accordingly, the court dismissed the action.

Oncor petitioned this Court for review, and we requested briefing on the merits. But before Oncor filed its brief, the Legislature enacted House Bill 971, adding Section 37.053(d) of the Utilities Code, which provides in part:

For transmission facilities ordered or approved by the [PUC] ..., the rights extended to an electric corporation under Section 181.004 include all public land, except land owned by the state, on which the commission has approved the construction of the line.[13]

In its brief, Oncor argued that the court of appeals' opinion and judgment should be vacated and the case remanded to the trial

---

**5.** *See* Tex. Util.Code § 37.054("(a) When an application for a certificate is filed, the commission shall: (1) give notice of the application to interested parties and to the office; and (2) if requested: (A) set a time and place for a hearing; and (B) give notice of the hearing. (b) A person or electric cooperative interested in the application may intervene at the hearing.").

**6.** The Authorities tell us that they "do not seek to change Oncor's route ... as established by the [PUC]" and that "DART and Oncor (or its predecessor, TXU Electric Company) have entered into over 800 agreements for Oncor's lines to cross DART property without the use of eminent domain." Respondents' Brief on the Merits 2.

**7.** Tex Util.Code § 181.004; *see id.* § 181.001 (defining "corporation" and "electric corporation" for purposes of chapter 181); *id.* § 181.001(2) (" 'Electric corporation' means an electric current and power corporation.").

**8.** Tex. Transp. Code § 452.052(c) ("An authority is a governmental unit under [the Texas

Tort Claims Act], and the operations of the authority are not proprietary functions for any purpose including the application of [the Act]."); *Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 661 (Tex.2008) ("Dallas Area Rapid Transit is a regional public transportation authority that performs only governmental functions and is immune from suit under Texas law." (footnotes omitted)).

**9.** Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) (authorizing an interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [the Texas Tort Claims Act]").

**10.** 331 S.W.3d 91, 97–100 (Tex.App.-Dallas 2010).

**11.** *Id.* at 100–106.

**12.** *Id.* at 106–107.

**13.** Tex. Util.Code § 37.053(d).

court to consider the effect of the new statute. Oncor reserved its argument for reversal of the court of appeals' opinion. The Authorities responded that Section 37.053(d) cannot affect this case for three reasons: (1) the statute does not clearly and unambiguously waive immunity any more than does Section 181.004; (2) the statute should be applied prospectively only; and (3) the Authorities, as political subdivisions of the State, have the same immunity as the State and therefore fall within the statutory exception for State-owned land. We granted Oncor's petition.[14] We address each of the Authorities' arguments in turn. We assume, without deciding, that governmental entities are immune from condemnation suits.

## II

■ We have long held,[15] and the Legislature has more recently come to expressly require of itself,[16] that a waiver of governmental immunity must be clear and unambiguous. Were we to apply that standard to Section 181.004, our analysis would proceed along these lines. Section 181.004 confers on gas and electric utilities a power of eminent domain over the "property of any person or corporation." Since the

adoption of the Code Construction Act in 1967, the Legislature has instructed that in construing its codes, the word "person" includes the "government or governmental subdivision or agency" "unless the statute or context ... requires a different definition".[17] But in 2001, the Legislature added that "the use of 'person' ... to include governmental entities[ ] does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction." [18] These directives do not establish whether Section 181.004 waives immunity and shed no light at all on what the Legislature intended by its use of the word "person" in general statutes—not codes—enacted in 1911, when the predecessor to Section 181.004 was first enacted.[19] The court of appeals was not persuaded by Oncor's arguments that a utility's power to condemn public lands was recognized in early case law.[20] And while the Authorities are "corporate bod[ies]",[21] one may certainly question whether that statutory description of their capacity brings them within the entities whose property can be condemned by a gas or electric corporation. In short, whether Section 181.004 clearly and unam-

14. 55 Tex.Sup.Ct.J. 2 (Sept. 30, 2011).

15. *Welch v. State*, 148 S.W.2d 876, 879 (Tex. Civ.App.-Dallas 1941, writ ref'd) ("Although the Legislature is authorized to waive the State's immunity from such liability, its intention to do so should appear by clear and unambiguous language.").

16. TEX. GOV'T CODE § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

17. Act of May 24, 1967, 60th Leg., R.S., ch. 455. § 1, 1967 Tex. Gen. Laws 1036, 1036, codified formerly as TEX.REV.CIV. STAT. ANN. art.

5429b–2 and now as TEX. GOV'T CODE § 311.005(2); *see also* TEX. UTIL.CODE § 1.002 (providing that the Code Construction Act "applies to the construction of each provision in [the Utilities Code] except as otherwise expressly provided by [the Utilities Code]").

18. Act of May 26, 2001, 77th Leg., R.S., ch. 1158, § 8, 2001 Tex. Gen. Laws 2570, 2572, codified as TEX. GOV'T CODE § 311.034.

19. Act approved March 25, 1911, 32d Leg., R.S., ch. 111, § 4, 1911 Tex. Gen. Laws 228, 229.

20. 331 S.W.3d 91, 100–106 (Tex.App.-Dallas 2010).

21. TEX. TRANSP. CODE § 452.052(a).

biguously waives a government landowner's immunity is a difficult question.[22]

■ And it is one we need not answer here because our focus instead is on Section 37.053(d). That statute provides that "the rights extended to an electric corporation under Section 181.004"—which by the latter's terms are the rights "to enter on, condemn, and appropriate ... land, [a] right-of-way, [an] easement, or other property"—"include" certain "public land" in certain circumstances. Section 37.053(d) applies only to electric corporations, not gas corporations also covered by Section 181.004. The rights conferred do not extend to all public land but only to public land not owned by the State. And those rights exist only when construction of transmission facilities on the land is PUC-approved.

■ Had Section 37.053(d) gone on to state "immunity is waived", its effect would be perfectly clear. But as we have observed, not all statutes are so explicit, and "[t]he rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded."[23] We think Section 37.053(d) is clear enough. A general provision that electric utilities can condemn public land might be construed merely to recognize a power that cannot be exercised without a specific waiver of immunity, just as a statute authorizing a governmental

entity to "be sued" does not waive immunity for all suits.[24] But Section 37.053(d) is very specific: only electric corporations, only some land, and only with PUC approval. A statute creating specific, restricted "rights", as Section 37.053(d) does, cannot reasonably be read to tacitly condition their exercise on a separate waiver of immunity. The obvious purpose of Section 37.053(d)—indeed, its only apparent purpose—is to provide for rights that can actually be exercised. "If a statute leaves no reasonable doubt of its purpose, we will not require perfect clarity, even in determining whether governmental immunity has been waived."[25]

■ In applying the clear-and-unambiguous standard, "we must look at whether a statute makes any sense if immunity is not waived."[26] We think Section 37.053(d) does not. Accordingly, we conclude that it waives governmental immunity.

## III

The Authorities argue that the Legislature did not intend for Section 37.053(d) to apply in a case filed before it took effect and that such application would violate the constitutional prohibition against retroactive laws.[27]

The Legislature has directed that in construing its codes, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective."[28] House Bill 971 enacted Section 37.053(d)

22. We note that condemnation of public property generally involves a number of other considerations, such as the nature of the condemnor, the scope of its authority, and an assessment of competing public uses. *See generally* 1 A JULIUS L. SACKMAN, NICHOLS ON EMINENT DOMAIN § 2.17 (3d ed. 2011).

23. *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995).

24. *Tooke v. City of Mexia,* 197 S.W.3d 325, 342 (Tex.2006).

25. *Barfield,* 898 S.W.2d at 292.

26. *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 6 (Tex.2000).

27. TEX. CONST. art. I, § 16 ("No ... retroactive law ... shall be made.").

28. TEX. GOV'T CODE § 311.022.

and two other provisions. Of the other two, the Bill expressly made one applicable only in future PUC proceedings and the other in pending and future PUC proceedings.[29] Otherwise, Section 5 provided that the Bill should take effect immediately if it received a two-thirds vote in both houses of the Legislature,[30] which it did. Thus, Section 37.053(d) was expressly made effective immediately in all proceedings.

■ Applying the statute in this proceeding does not violate the Constitution. "The prohibition against retroactive application of laws does not apply to procedural, remedial, or jurisdictional statutes, because such statutes typically do not affect a vested right."[31] Immunity from suit is a matter of jurisdiction. Furthermore, "changes in the law that ... have little impact on prior rights[ ] are usually not unconstitutionally retroactive."[32] "A governmental entity cannot complain of a retroactive waiver of immunity, since all governmental immunity derives from the State, and a governmental entity acquires no vested rights against the State."[33]

Accordingly, we conclude that Section 37.053(d) applies in this case.

## IV

■ Finally, the Authorities argue that their property falls within Section 37.053(d)'s exception for "land owned by the state". They concede, as they must, that they are not the State,[34] but they argue that because their immunity is derived from the State, they should share the exception. But the exception is based on ownership, not the source of immunity, and plainly, the State does not own the Authorities' rail line. Moreover, if the exception applied to the property of every governmental entity with State-derived immunity, it would apply to all public land and would swallow the rest of the provision, denying it effect. We must presume that the Legislature intends its enactments to be effective.[35] Consequently, we cannot construe the exception to include the Authorities' property.

\* \* \*

For these reasons, we vacate the opinion and judgment of the court of appeals and remand the case to the trial court for further proceedings.[36]

**29.** House Bill 971 §§ 2(b) & 4.

**30.** *Id.* § 5.

**31.** *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia,* 324 S.W.3d 544, 548 (Tex.2010).

**32.** *Robinson v. Crown Cork & Seal Co.,* 335 S.W.3d 126, 146 (Tex.2010).

**33.** *Tooke v. City of Mexia,* 197 S.W.3d 325, 345 (Tex.2006).

**34.** *Cf. Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939–940 (Tex. 1993).

**35.** TEX. GOV'T CODE § 311.021(2) (providing that, when a statute is enacted, it is presumed that "the entire statute is intended to be effective").

