

# NUMBER 13-20-00355-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**HIDALGO COUNTY WATER IMPROVEMENT
DISTRICT NO. 3,**                                         **Appellant,**

**v.**

**HIDALGO COUNTY WATER IRRIGATION
DISTRICT NO. 1,**                                          **Appellee.**

---

### On appeal from County Court at Law No. 4
### of Hidalgo County, Texas.

---

# OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Opinion by Justice Benavides

In this case, we must decide whether a governmental entity is immune from suit to condemn its property. Appellant Hidalgo County Water Improvement District No. 3 (Improvement District) filed a condemnation proceeding against appellee Hidalgo County Water Irrigation District No. 1 (Irrigation District) seeking a permanent subterranean

easement for the purpose of installing a water pipeline. The trial court dismissed the proceeding for want of jurisdiction based on the Irrigation District's assertion of governmental immunity from suit. On appeal, the Improvement District contends that immunity does not apply to this in rem proceeding in the first instance, but even if it does, a legislative waiver exists. We affirm.

## I.   BACKGROUND

The Improvement District and Irrigation District are both political subdivisions of the State performing governmental functions. *See Bennett v. Brown Cnty. Water Imp. Dist. No. 1*, 272 S.W.2d 498, 499–01 (Tex. 1954). "As such, they enjoy governmental immunity from suit, unless immunity is expressly waived." *Kirby Lake Dev., Ltd. v. Clear Lake Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010). They also both enjoy eminent domain authority. *See* TEX. WATER CODE ANN. § 49.222.

In 2018, in conjunction with the City of McAllen's extension of a public roadway known as Bicentennial Boulevard, the Improvement District decided to extend its raw water pipeline along the roadway's public right-of-way. To that end, the Improvement District obtained an easement from the City and a crossing agreement from another irrigation district.

However, the planned extension would also cross the right-of-way of the Irrigation District's canal. Unable to secure the Irrigation District's permission to cross under its property, the Improvement District filed its Original Petition for Condemnation, seeking a subsurface easement for the "public purpose of constructing, operating, and maintaining a new public water pipeline." The trial court appointed three special commissioners who,

2

after conducting a hearing, awarded the Irrigation District $1,900 in damages for the taking of its property.

The Irrigation District objected to the award under the paramount purpose doctrine, alleging that the taking would materially interfere with its existing public use of the property: "providing water and irrigation services to numerous residents of Hidalgo County." The Irrigation District alleged that constructing the new water line would necessarily damage their existing water lines and compromise the canal, thereby preventing the Irrigation District from providing service to its customers. Moreover, because the two entities provide the same or similar public services, the Irrigation District argued that the Improvement District "cannot satisfy its burden under the paramount purpose standard."

The Irrigation District then filed a plea to the jurisdiction based on governmental immunity from suit. The trial court granted the plea, and this appeal ensued.

## II. STANDARD OF REVIEW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446).

3

A plea to the jurisdiction is a procedural vehicle used to challenge the trial court's jurisdiction. *Blue*, 34 S.W.3d at 554. When a plea challenges the sufficiency of the pleadings, we construe the pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law. *Id.*

### III. APPLICABLE LAW

**A. Eminent Domain**

"A government is vested with certain inherent powers commensurate with its status as a sovereign, including the right of 'eminent domain' in which private property is taken—in exchange for compensation—and converted for public use." *Alewine v. City of Houston*, 309 S.W.3d 771, 774 (Tex. App.—Houston [14th Dist.] 2010, pet denied); *Byrd Irrigation Co. v. Smythe*, 146 S.W. 1064, 1065 (Tex. App.—San Antonio 1912, no writ) ("The power of eminent domain is an attribute of government, and is inherent in it."). Deemed an "extraordinary power," *Incorporated Town of Hempstead v. Gulf States Utils. Co.*, 206 S.W.2d 227, 229 (Tex. 1947), the only constitutional constraints on the right of eminent domain are that the condemned property be for public use and the landowner receive just compensation. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019) (citing TEX. CONST. art. I, § 17). Public use means "the public obtains some definite right or use in the undertaking to which the property is devoted." *City of Austin v. Whittington*, 384 S.W.3d 766, 779 (Tex. 2012) (citing *Coastal States Gas Producing Co. v. Pate*, 158 Tex. 171, 309 S.W.2d 828, 833 (1958)). In this case, it is undisputed that the

4

Improvement District's installation of a raw water pipeline would constitute a public use.

## B.     Immunity

Governmental immunity from suit protects the political subdivisions of the State from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citations omitted). Like eminent domain, immunity from suit is "one of the essential attributes of sovereignty." *Bd. of Land Comm'rs v. Walling*, Dallam 524, 525 (Tex. 1843).

Immunity's primary justification—at least in modern times—is "to shield the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Without this protection, public funds would be used to defend lawsuits and pay judgments instead of providing public services, leading to "governmental paralysis." *Hughes v. Tom Green County*, 573 S.W.2d 212, 218 (Tex. 2019). Thus, immunity "protects the public as a whole by preventing potential disruptions of key government services that could occur when government funds are unexpectedly and substantially diverted by litigation." *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015). Relatedly, immunity "preserves separation-of-powers principles by preventing the judiciary from interfering with the Legislature's prerogative to allocate tax dollars." *Id.; see also Hillman*, 579 S.W.3d at 367 (Guzman, J., concurring) ("Sanctioning the recovery of monetary damages—without any legislatively considered limitations like those in the Texas Tort Claims Act—would have significant public-fisc implications that raise separation-of-powers concerns.").

The judiciary generally defers to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy concerns associated with allowing suits to proceed against the government. *Reata*, 197 S.W.3d at 375 (citing *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 854 (Tex. 2002)). As a creature of the common law, however, the judiciary determines the existence of immunity in the first instance, defining its boundaries where immunity's purposes are not implicated. *Id.* at 374. *If* immunity applies to a claim, "*then* the judiciary defers to the legislature to waive such immunity." *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 435 (Tex. 2016) (citations omitted). In deciding whether immunity applies, a court considers "both the nature and purposes of immunity." *Id.* at 432.

Following *Reata*, the "foundational case" discussing judicial abrogation of immunity, *State ex rel. Best v. Harper*, 562 S.W.3d 1, 17 (Tex. 2018), the Supreme Court of Texas has continued to "prune[] and shape[] the doctrine of immunity." *Wasson Ints.*, 489 S.W.3d at 432, 434 (finding immunity does not apply to contract claims against cities arising out of their performance of proprietary functions); *see also, e.g.*, *Brown & Gay Eng'g*, 461 S.W.3d at 121 (declining to extend immunity to private contractors authorized to perform governmental functions); *Harper*, 562 S.W.3d at 19 (deciding immunity does not apply to a counterclaim for attorney's fees under the Texas Citizens Participation Act); *Hillman v. Nueces County*, 579 S.W.3d 354, 361–63 (Tex. 2019) (declining invitation to abrogate immunity from *Sabine Pilot* claims for wrongful termination); *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 457–58 (Tex. 2020) (finding immunity does not apply to suits under the Expedited Declaratory Judgment Act).

6

However, our high court has "never decided whether a governmental entity is immune from suit to condemn its property." *In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 544 (Tex. 2016); *see also Oncor Elec. Delivery Co. v. Dall. Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012) ("We assume, without deciding, that governmental entities are immune from condemnation suits."). Only one of our sister courts has addressed the issue, but that opinion was later vacated on other grounds, meaning it has no precedential value. *Dall. Area Rapid Transit v. Oncor Elec. Delivery Co.*, 331 S.W.3d 91 (Tex. App.—Dallas 2010), *vacated on other grounds*, 369 S.W.3d 845; *Morath v. Lewis*, 601 S.W.3d 785, 791 (Tex. 2020) (concluding that vacated opinions have no precedential value, but "future litigants and courts are free to consult a vacated opinion and to rely on it if they find it persuasive").

## IV. ANALYSIS

### A. Judicial Abrogation

By its first issue, the Improvement District contends that governmental immunity does not exist in condemnation proceedings. *See City of Galveston v. State*, 217 S.W.3d 466, 475 (Tex. 2007) (Willett, J., dissenting) ("Before tackling waiver, there is an antecedent question here: whether governmental immunity even exists in a case like this."). In deciding this issue, we keep in mind our guiding principles, "the nature and purposes of immunity." *Wasson Ints.,* 489 S.W.3d at 432.

The Improvement District contends that condemnation proceedings do not implicate immunity because they are in rem proceedings. *See State v. Rogers*, 772 S.W.2d 559, 561 (Tex. App.—Amarillo 1989, writ denied) ("[I]t seems to be established

7

that a condemnation proceeding is an in rem matter and is not a taking of rights of persons in an ordinary sense but is an appropriation of physical properties." (citing *Reeves v. City of Dallas*, 195 S.W.2d 575, 581 (Tex. App.—Dallas 1946, writ refused n.r.e.))); *see also U.S. v. Petty Motor Co.*, 327 U.S. 372, 376 (1946) ("Condemnation proceedings are in rem . . . ." (citing *Duckett & Co. v. U.S.*, 266 U.S. 149, 151 (1924))). It would be more accurate, however, to say that a condemnation proceeding is a quasi in rem proceeding because it fixes the property interests of the condemnor and the landowner in the property. *See Bodine v. Webb*, 992 S.W.2d 672, 676 (Tex. App.—Austin 1999, pet. denied) ("While an *in rem* action affects the interests of all persons in the world in the thing, a *quasi in rem* action affects only the interests of particular persons in the thing." (citing *Green Oaks Apts., Ltd. v. Cannan*, 696 S.W.2d 415, 418 (Tex. App.—San Antonio 1985, no writ))). Regardless of the type, an in rem proceeding is an action "instituted directly against a thing, taken directly against property, or brought to enforce a right in the thing itself." *City of Conroe*, 602 S.W.3d at 457 (cleaned up) (quoting *Bodine*, 992 S.W.2d at 676). Consequently, an in rem judgment "is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner." *Bodine*, 992 S.W.2d at 676 (citing *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977)). The Improvement District reasons that condemnation proceedings do not implicate the need to protect the public fisc from "the costs and consequences of improvident actions of their governments" because no personal liability will be imposed on a governmental landowner.[1] *See Tooke*, 197 S.W.3d at 332. To the contrary, the Improvement District points out that

_____

[1] We note that the Improvement District's position is not entirely accurate as a landowner can be required to pay the costs of a condemnation proceeding. *See* TEX. PROP. CODE ANN. § 21.047(a).

8

condemnation proceedings protect a landowner's constitutional right to "adequate compensation" for the taking of its property. TEX. CONST. art. I, § 17(a); TEX. PROP. CODE ANN. § 21.042 (providing for the assessment of damages awarded to the landowner).

To support its position, the Improvement District relies on the Supreme Court of Texas's recent opinion in *City of Conroe v. San Jacinto River Auth*, 602 S.W.3d 444 (Tex. 2020). In *City of Conroe*, the supreme court found that the Expedited Declaratory Judgment Act (EDJA) did not implicate immunity because, among other reasons, "EDJA suits concern only *in rem* rights." *Id.* at 457. Seizing on this language, the Improvement District argues that *City of Conroe* stands for the broad proposition that "governmental immunity does not apply to *in rem* proceedings." We disagree. The holding in *City of Conroe* was limited to "EDJA suits," and its reasoning does not extend to condemnation proceedings. *See id.*

The EDJA is "an expedited declaratory procedure to establish the 'legality and validity' of public securities and 'public security authorizations.'" *Id.* at 450 (quoting TEX. GOV'T CODE ANN. § 1205.021). Having construed the EDJA narrowly to include only in rem rights, the supreme court found the trial court had jurisdiction to declare whether the execution of certain contracts was legal and valid, but not other declarations that would concern in personam rights and liabilities, such as contract performance. *Id.* at 456–57.

EDJA suits and condemnation proceedings do not concern the same in rem rights. Unlike the EDJA, a condemnation proceeding constitutes a forced transfer of a property interest. *See* TEX. PROP. CODE ANN. §§ 21.0113(a) ("An entity with eminent domain authority that wants to acquire real property for a public use must make a bona fide offer

9

to acquire the property from the property owner voluntarily."); 012(a) (providing that when the condemning authority "is unable to agree with the owner of the property on the amount of damages, the entity may begin a condemnation proceeding by filing a petition in the proper court"). In other words, the Improvement District is effectively asking the trial court to exert control over the Irrigation District's choice not to enter into a crossing agreement with the Improvement District. Generally, immunity preserves separation-of-power principles by preventing the judiciary from interfering with policy decisions made by other branches of the government. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009) (explaining that immunity does not apply to *ultra vires* suits because they "do not seek to alter government policy but rather enforce existing policy" and that "[t]o fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."); *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653 (Tex. 2007) (explaining that the purpose of the "discretionary powers" exception to the Texas Tort Claim Act's waiver of immunity "is to avoid judicial review or interference with those policy decisions committed to the other branches of government." (citing *State v. Terrell*, 588 S.W.2d 784, 787 (Tex. 1979))). As the supreme court recently reaffirmed, "immunity preserves the separation of powers by preventing the judiciary from interfering with the policymaking responsibilities of other branches of government and seeking to control their choices regarding the use of public funds." *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 739 (Tex. 2020). We see no reason why the same would not be true for choices regarding the use of public land. Thus, even if abrogating immunity in

condemnation proceedings would "not present any grave danger to the public fisc," *Harper*, 562 S.W.3d at 19, it would nonetheless threaten separation-of-power principles that immunity also protects.[2] *See Nettles*, 606 S.W.3d at 739.

There is another distinction between condemnation proceedings and EDJA suits. The cities claiming immunity in *City of Conroe* were "not *required* to expend financial resources to defend EDJA litigation" because they voluntarily intervened in the litigation. 602 S.W.3d at 458 (emphasis added) (citing *Reata*, 197 S.W.3d at 375). In addition to shielding governmental entities from paying judgments, immunity from suit protects public funds from being used to pay unexpected litigation costs. *Reata*, 197 S.W.3d at 375. The Irrigation District contends that, unlike the governmental entities in *City of Conroe*, a landowner is not a willing participant in a condemnation proceeding, and thus a governmental landowner will be compelled to expend public funds to defend itself. We agree—to an extent.

If a condemnation proceeding becomes necessary because the parties cannot agree on just compensation, then presumably the governmental landowner has made a calculated decision to expend resources to pursue additional compensation—a voluntary decision that does not implicate immunity. *See Id.* at 375 ("[I]f the governmental entity . . .

---

[2] The Improvement District argues that the common law doctrine of paramount purposes, as asserted by the Irrigation District in this case, protects the policy decisions of governmental landowners. Under that doctrine, "condemnees may prevent a condemnation when the property is already devoted to another public use and the condemnee establishes that the new condemnation 'would practically destroy the use to which it has been devoted.'" *Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616–17 (2008) (citing *Sabine & E. Tex. Ry. Co. v. Gulf & Interstate Ry. Co. of Tex.*, 46 S.W. 784, 786-87 (Tex. 1898)). The burden then shifts to the condemning authority to prove that its purpose for condemnation is of paramount importance and cannot be practically accomplished in any other way. *Id.* at 617. Although the paramount purposes doctrine may provide the Irrigation District a measure of protection in this case, we must consider how abrogated immunity would affect all governmental landowners. There are myriad reasons why a governmental landowner may decide not to voluntarily convey property to a condemning authority, and immunity protects those policy decisions from judicial review.

chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs."). We also recognize that the condemnation scheme is designed to promote early settlement between the parties and avoid unnecessary litigation costs. *In re Lazy W Dist. No. 1*, 493 S.W.3d at 542; *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 184 (Tex. 2004). However, where the governmental landowner objects to an award on a non-monetary basis, as in this case, then the costs of defending the lawsuit would constitute "unforeseen expenditures that could hamper governmental functions." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam) (citing *IT–Davy*, 74 S.W.3d at 854). On balance, because we must consider how our ruling would affect all governmental landowners, we think this consideration weighs in favor of applying immunity.

The Improvement District also argues that abrogating immunity is "good public policy." According to the Improvement District, governmental landowners may use the shield of immunity to charge a premium for their property, leading to increased costs for public projects. That in turn may motivate condemnors to route projects such as highways and pipelines away from public property, shifting a disproportionate share of the burden of eminent domain to private landowners. Of course, on the record before us, we can neither confirm nor deny the validity of these concerns. But we are certain that the Legislature is better situated than the judiciary to resolve the conflicting policy concerns associated with waiving immunity. *Reata*, 197 S.W.3d at 375 (citing *IT–Davy*, 74 S.W.3d at 854).

12

Finally, and perhaps most importantly, it has been the law in Texas for sixty years that governmental entities enjoy immunity from "a suit for land." *State v. Lain*, 349 S.W.2d 579, 582 (Tex. 1961); *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (reaffirming *Lain* and holding that if a suit "is in substance a trespass to try title action, it is barred by sovereign immunity" absent a legislative waiver); *Cameron County v. Tompkins*, 422 S.W.3d 789, 797 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied) ("[S]uits to try the State's title to property are immunity-barred."). The Improvement District attempts to distinguish trespass-to-try-title suits from condemnation proceedings but, in the end, both are "suits for land." *Lain*, 349 S.W.2d at 582. To be sure, a trespass-to-try-title suit is also a quasi in rem proceeding to the extent that it adjudicates the parties' competing title claims. *State v. Bryan*, 210 S.W.2d 455, 463 (Tex. App.—Austin 1948, writ refused n.r.e.). Therefore, without further guidance from the supreme court, we are reluctant to find that *City of Conroe* indirectly overruled *Lain. See City of Galveston v. State*, 217 S.W.3d 466, 471 (Tex. 2006) ("[C]ourts should be very hesitant to declare immunity nonexistent in any particular case."). We overrule the Improvement District's first issue.

## B. Legislative Waiver

In the alternative, the Improvement District argues that § 49.222(a) of the Texas Water Code waives the Irrigation District's immunity. *See* TEX. WATER CODE ANN. § 49.222(a). On this point, we find the statute's language ambiguous at best; therefore, we cannot say "without doubt" that the Legislature intended to waive the Irrigation District's immunity. *See Hillman*, 579 S.W.3d at 360 (quoting *Harris Cnty. Hosp. Dist. v.*

13

*Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009)).

A legislative waiver of immunity must be expressed in "clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034. Explicit waivers leave no room for debate about the Legislature's intent. *See, e.g.*, TEX. CIV. PRAC. & REM CODE ANN. § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). Absent those "magic words," a statute may nonetheless waive immunity where the Legislature's consent to suit is implicit in the statute's language. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003). When analyzing statutes for waiver, we

> (1) consider whether the statutory provisions, even if not a model of clarity, waive immunity without doubt;
>
> (2) resolve any ambiguity as to waiver in favor of retaining immunity;
>
> (3) generally find waiver if the Legislature requires that the governmental entity be joined in a lawsuit even though the entity would otherwise be immune from suit;
>
> (4) consider whether the legislature provided an objective limitation on the governmental entity's potential liability; and
>
> (5) consider whether the statutory provisions would serve any purpose absent a waiver of immunity.

*Hillman*, 579 S.W.3d at 360 (cleaned up).

Section 49.222(a) provides that:

> A district or water supply corporation may acquire by condemnation *any land*, easements, or other property inside or outside the district boundaries, or the boundaries of the certificated service area for a water supply corporation, necessary for water, sanitary sewer, storm drainage, or flood drainage or control purposes or for any other of its projects or purposes, and may elect to condemn either the fee simple title or a lesser property interest.

14

TEX. WATER CODE ANN. § 49.222(a) (emphasis added). The Improvement District contends that the plain meaning of "any land" includes both private and public land, and therefore, § 49.222 implicitly waives the Irrigation District's immunity. The Irrigation District responds that even if this construction is correct, a point it does not concede, this argument was foreclosed in *Oncor Electric Delivery Company LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845 (Tex. 2012).

> In *Oncor*, the supreme court interpreted the following eminent domain statute:
>
> > For transmission facilities ordered or approved by the PUC, the rights extended to an electric corporation under Section 181.004 include all public land, except land owned by the state, on which the commission has approved the construction of the line.

*Id.* at 848 (cleaned up) (quoting TEX. UTIL. CODE ANN. § 37.053(d)). In explaining why § 37.053 waived immunity, the court noted that "[a] general provision that electric utilities can condemn public land might be construed merely to recognize a power that cannot be exercised without a specific waiver of immunity, just as a statute authorizing a governmental entity to 'be sued' does not waive immunity for all suits." *Id.* at 850 (citing *Tooke*, 197 S.W.3d at 342). Instead, the court found that § 37.053 contained "very specific," restricted rights that would be meaningless unless the statute constituted a waiver. *Id.*

We conclude that § 49.222(a) more closely resembles the hypothetical statute in *Oncor* than the unambiguous waiver of immunity found in § 37.053. We have no problem saying "any land" means both private and public land; however, without more, § 49.222(a) can be interpreted as merely a general grant of power to condemn public land that cannot

15

be exercised without a specific waiver of immunity. *See Oncor*, 369 S.W.3d at 850. Section 49.222(a) does not contain any of the specific restrictions found in § 37.053 that would render the statute meaningless if we did not construe it as a waiver. *See id.* To the contrary, the Improvement District's own construction of the statute allows for meaning beyond a waiver of immunity because it grants the Improvement District the authority to condemn *both* public and private land. *See, e.g.*, *Clear Lake City Water Auth. v. Clear Lake Country Club, L.P.*, 340 S.W.3d 27, 34 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (recognizing the condemnor's authority to condemn private land under § 49.222(a)). In short, because the statute makes sense without finding a waiver, and all ambiguities must be resolved in favor of retaining immunity, we overrule the Improvement District's second issue. *See Oncor*, 369 S.W.3d at 850; *Hillman*, 579 S.W.3d at 360.

## IV.    CONCLUSION

The trial court's judgment is affirmed.

GINA M. BENAVIDES
Justice

Delivered and filed on the
27th day of May, 2021.

16