# Supreme Court of Texas

No. 24-0447

The State of Texas and Kyle Madsen in his Official Capacity as
Director of Right of Way,

*Petitioners*,

v.

JRJ Pusok Holdings, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**Argued November 4, 2025**

JUSTICE BLAND delivered the opinion of the Court, in which
Justice Lehrmann, Justice Devine, Justice Busby, Justice Huddle, and
Justice Young joined.

JUSTICE YOUNG filed a concurring opinion.

JUSTICE HAWKINS filed a dissenting opinion, in which Justice
Sullivan joined, and in which Chief Justice Blacklock joined except as to
Part III(A).

The right to own property is "fundamental, natural, inherent,
inalienable, not derived from the legislature and . . . preexist[s] even

constitutions."[1] The Texas Constitution grants the State the power to interfere with this right only for public uses, subject to providing adequate compensation to the landowner. When condemned property is unnecessary for public use, the former owner has a statutory right to repurchase the property from the State in defined circumstances. In this case, we decide whether the State may claim immunity when a landowner invokes this right.

We conclude it cannot. Repurchase claims derive from constitutional limits placed on the State's eminent domain power. The Legislature placed a repurchase right among provisions authorizing other suits for which the State lacks immunity. It granted trial courts the power to determine all issues arising under such claims, expressly including cases against the State. To the extent immunity exists, the Legislature has waived it for such claims in the circumstances it has prescribed.

Property Code Chapter 21 sets forth the criteria a landowner must satisfy to allege a repurchase claim. As to those criteria, we hold the State's initiation of a condemnation suit to determine the value of property it takes sufficiently establishes a taking "through" eminent domain. A later settlement to fix that value does not waive the repurchase right. Further, a landowner may repurchase a portion of the land taken if only that portion is no longer necessary for public use. Finally, a county court at law has jurisdiction over a repurchase claim. For these reasons, we affirm the judgment of the court of appeals

---

[1] *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977).

denying the State's jurisdictional plea as to the landowner's repurchase claim.

## I

## A

Joyce Hutcherson, Rudolph Pusok, and Jimmie Pusok (collectively, the Landowners) owned acreage in Tomball, Harris County, Texas. In October 2013, the State notified the Landowners that it intended to acquire their property for a highway project. The State offered $496,120, describing the payment as "just compensation . . . in accordance with State law." The State outlined the process for accepting its offer or submitting a counteroffer. It also provided a copy of the Landowner's Bill of Rights in accordance with Government Code Section 402.031 and Property Code Chapter 21.[2] The Bill of Rights states that it "applies to any attempt by the government or a private entity to take your property." Pertinently, the Bill of Rights states:

> If private property was condemned by a governmental entity, and the public use for which the property was acquired is canceled before that property is used for that public purpose, no actual progress is made toward the public use within ten years or the property becomes unnecessary for public use within ten years, *landowners may have the right to repurchase the property for the price*

---

[2] *See* Tex. Gov't Code § 402.031(a) ("The attorney general shall prepare a written statement that includes a bill of rights for a property owner whose real property may be acquired by a governmental or private entity through the use of the entity's eminent domain authority under Chapter 21, Property Code."); Tex. Prop. Code § 21.0112(a) ("[T]he entity [with eminent domain authority] must send by first-class mail or otherwise provide a landowner's bill of rights statement provided by Section 402.031, Government Code . . . .").

*paid to the owner by the entity at the time the entity acquired the property through eminent domain.*[3]

The Landowners received a final offer from the State in December 2013. The letter repeated the initial offer and further provided: "If this offer is not accepted within fourteen (14) days from the date of delivery of this letter, it will be considered as having been rejected. . . . If you elect to reject this offer, eminent domain proceedings will be initiated by the State." The letter included another copy of the Landowner's Bill of Rights, as well as a deed the State described as a "proposed instrument by which the property or property interest would be conveyed to the State."

The State petitioned for condemnation in April 2014 with a suit in a Harris County civil court at law. The State alleged: (1) it intended to acquire the land for public use; (2) it had sent a copy of the Landowner's Bill of Rights; and (3) it had made a bona fide purchase offer as required by law.

About three weeks later, the State and the Landowners settled on a value for the condemned land. A special warranty deed conveyed the property to the State in exchange for $681,705. The deed provides: "The consideration recited herein represents a settlement and compromise by all parties as to the value of the property herein conveyed . . . ." The Landowners agreed not to "seek any additional compensation, damages, attorney's fees, or expenses from the State of Texas." The trial court granted the State's motion for nonsuit and dismissed the case in August 2014.

---

[3] Emphasis added.

Government officials decided to reroute the highway project, leaving a portion of the condemned land unused. Counsel for the Landowners emailed the Department of Transportation, inquiring whether the State still intended to use that portion of the property. A representative for the Department's Right of Way Division responded in February 2017, stating: "Please see the attached pdf showing what TxDOT would consider surplus." When the State refused to sell the Landowners the identified surplus property, the Landowners assigned their rights to JRJ Pusok Holdings, LLC, to pursue a repurchase claim.

**B**

JRJ sued the State and the Department of Transportation Director in a different Harris County civil court at law, alleging violations of JRJ's repurchase right under Property Code Chapter 21. The State responded with a plea to the jurisdiction, asserting sovereign immunity and lack of justiciability. The trial court granted the State's plea and dismissed the case.

The court of appeals reversed the dismissal of JRJ's repurchase claim.[4] Relying on a similar case, the court of appeals first held that "a full reading of Chapter 21, including the purpose of Subchapter E," demonstrates the State's waiver of immunity for repurchase claims.[5]

---

[4] 693 S.W.3d 679, 689 (Tex. App.—Houston [14th Dist.] 2023). JRJ did not challenge the portion of the court of appeals' judgment affirming dismissal of its additional inverse condemnation and ultra vires claims in this Court. *Id.* at 688–89. Accordingly, we do not review those claims. *See* Tex. R. App. P. 53.2(g).

[5] 693 S.W.3d at 683–84 (quoting *State v. LBJ/Brookhaven Invs., L.P.*, 650 S.W.3d 922, 932 (Tex. App.—Dallas 2022, pet. denied)).

5

Second, the court reasoned that the State acquired JRJ's property "through eminent domain" because the State compelled the transfer by initiating a condemnation action.[6] Finally, in a supplemental opinion denying the State's motion for rehearing, the court of appeals concluded that the Harris County civil court at law had jurisdiction to decide the repurchase claim.[7] We granted the State's petition for review, in which it challenges each of these holdings.

## II

We first address whether sovereign immunity bars repurchase claims, conferred as a landowner's "right," when the State designates property as unnecessary for public use.[8]

The doctrine of sovereign immunity provides that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent."[9] Although it is the Legislature's role to waive sovereign immunity, "it remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance."[10]

---

[6] *Id.* at 685.

[7] 693 S.W.3d 860, 861 (Tex. App.—Houston [14th Dist.] 2024).

[8] The State properly asserted its immunity defense in a plea to the jurisdiction. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Whether a court has subject matter jurisdiction is a question of law we review de novo. *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020).

[9] *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847).

[10] *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006).

Our analysis begins with an acknowledgment that "the State derives its authority from 'the people.'"[11] "[T]o waive immunity, consent to suit must ordinarily be found in a constitutional provision or legislative enactment."[12] "[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."[13] The Legislature may simply state that "sovereign immunity is waived" for a particular claim,[14] but when it does not, the rule "cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded."[15] As always, we consider statutory language in its full context.[16]

---

[11] *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) (quoting Tex. Const. art. I, § 2 ("All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit.")).

[12] *Id.*

[13] Tex. Gov't Code § 311.034.

[14] *See, e.g.*, *id.* § 554.0035 ("Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter."); Tex. Civ. Prac. & Rem. Code § 110.008(a) ("Subject to Section 110.006, sovereign immunity . . . from liability is waived and abolished to the extent of liability created by Section 110.005 . . . ."); Tex. Nat. Res. Code § 52.035(c) ("The state waives its right to claim sovereign immunity in any action commenced against the state . . . .").

[15] *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000) (quoting *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995)).

[16] *See Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019) ("Statutes cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes." (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 539 (1947))).

## A

Our Constitution recognizes both adequate-compensation and public-use limits on the State's eminent domain power.[17] Beginning with the 1876 Constitution, it provided: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ."[18] To that end, the Legislature prescribes a process for adjudicating the "adequate compensation" the State must pay.[19]

The past half-century has seen a shift toward strengthening landowner protections based on the public-use limit to the eminent domain power. Our early jurisprudence recognized immunity as a potential defense to suits grounded in the takings clause.[20] The law changed significantly in 1980, however, when our Court recognized inverse condemnation claims in *Steele v. City of Houston*.[21] We held that the State has no immunity against condemnation claims when it takes

---

[17] George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 63 (1977); *see also* Repub. Tex. Const. of 1836, Declaration of Rights, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 1083 (Austin, Gammel Book Co. 1898) ("Thirteenth. No person's particular services shall be demanded, nor property taken or applied to public use, unless by the consent of himself or his representative, without just compensation being made therefor according to law.").

[18] Tex. Const. of 1876, art. I, § 17.

[19] *See* Tex. Prop. Code § 21.011.

[20] *See City of Dallas v. Stewart*, 361 S.W.3d 562, 567–68 (Tex. 2012) (summarizing the history of our eminent domain and inverse condemnation jurisprudence).

[21] 603 S.W.2d 786, 791 (Tex. 1980).

property via eminent domain and fails to pay adequate compensation.[22] We reasoned that "[t]he Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use."[23] From *Steele* onward, our Court has acknowledged that "the Takings Clause is self-executing—that it alone authorizes suit, regardless of whether the Legislature has statutorily provided for it."[24]

In 2003, the Legislature created the first statutory repurchase right. Appended to the existing Property Code chapter governing eminent domain, the right applied to property "acquired by a governmental entity through eminent domain for a public use that was canceled before the 10th anniversary of the date of acquisition."[25] Under this version of the statute, the government was required to notify the property owner that the property was no longer designated for public use and offer to sell it "for the fair market value of the property at the time the public use was canceled."[26]

---

[22] *Id.*

[23] *Id.*; *see also State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) ("[S]overeign immunity does not shield the State from a claim based upon a taking under Article I, section 17 of the Texas Constitution, known as the 'takings clause.'").

[24] *Stewart*, 361 S.W.3d at 568.

[25] Act of June 1, 2003, 78th Leg., R.S., ch. 1307, § 2, 2003 Tex. Gen. Laws 4739, 4739 (amended 2011).

[26] *Id.* at 4740.

Two years later, the United States Supreme Court decided *Kelo v. City of New London*,[27] upholding private economic development as a valid public use under the Fifth Amendment's Takings Clause.[28] In reaching its controversial holding, however, the Court emphasized that "nothing in our opinion precludes any State from placing further restrictions on its exercise of the takings power."[29] Over forty states accepted the invitation and amended their laws. Among these, fifteen states either created or strengthened the right to repurchase condemned property no longer intended for public use.[30]

Texas responded to *Kelo* in three relevant ways. First, in 2007, the Legislature proposed expanding the repurchase right and to require the government to resell the property at the price the government paid to acquire it, rather than fair market value at the time of repurchase.[31] To eliminate any gift clause bar, the Legislature also proposed a corresponding amendment to the Constitution.[32] The Governor vetoed

---

[27] 545 U.S. 469 (2005).

[28] *Id.* at 483–84.

[29] *Id.* at 489.

[30] *See* Ala. Code § 11-47-170(c) (2005); Fla. Stat. § 73.013(1)(f)(2) (2006); Ga. Code Ann. § 22-1-2(c)(1) (2006); Ind. Code § 32-24-1-15 (2006); Iowa Code § 6B.56 (2006); Kan. Stat. Ann. § 72-1144(a) (2006); La. Const. Ann. art. I, § 4(H) (amended 2006); Minn. Stat. § 117.226(a) (2006); Nev. Const. art. I, § 22(6) (2008); Ohio Rev. Code Ann. § 163.211 (2007); Okla. Stat. tit. 27, § 17 (2011); Or. Rev. Stat. § 35.385 (2011); S.D. Codified Laws § 11-7-22.2 (2006); Tenn. Code Ann. § 29-17-1005(a)–(b) (2014); Wyo. Stat. Ann. § 1-26-801(d) (2007).

[31] Tex. H.B. 2006, 80th Leg., R.S. (2007).

[32] Tex. H.J.R. 30, 80th Leg., R.S. (2007).

the statutory amendments, citing cost,[33] but the People of Texas nonetheless voted to amend the Constitution to expressly permit the repurchase of property "at the price the entity paid at the time of acquisition" if: "(1) the public use . . . is canceled; (2) no actual progress is made toward the public use during a prescribed period of time; or (3) the property is unnecessary for the public use."[34]

Second, after the next legislative session, the People of Texas further amended the Constitution to enshrine additional limits on the eminent domain power found in Article I, Section 17.[35] The limits focused on the public-use requirement, mandating that a taking must be for:

(1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:

    (A) the State, a political subdivision of the State, or the public at large; or

    (B) an entity granted the power of eminent domain under law; or

(2) the elimination of urban blight on a particular parcel of property.[36]

---

[33] Veto Message of Gov. Perry, Tex. H.B. 2006, 80th Leg., R.S. (2007).

[34] Tex. Const. art. III, § 52j; *see also* Tex. Leg. Council, Analyses of Proposed Constitutional Amendments 49–55 (2007) (summarizing the history of Section 52j).

[35] Act of June 1, 2009, 81st Leg., R.S., § 1.01, 2009 Tex. Gen. Laws 5655, 5655–56.

[36] Tex. Const. art. I, § 17(a).

Whatever power the State enjoyed in 1876, the People curtailed it in response to perceived abuses of the public use requirement.[37]

Finally, building on this history, the Legislature succeeded in amending Chapter 21 in 2011.[38] Like the vetoed 2007 amendment, the 2011 amendments require the governmental entity to resell the property at "the price paid to the owner by the entity at the time the entity acquired the property through eminent domain."[39] Bearing this history in mind, we turn to the statutory framework.

**B**

Chapter 21, Subchapter A provides that a district court may decide "all issues, including the authority to condemn property and the assessment of damages," in a suit involving a claim for property "occupied by the party under the party's eminent domain authority":

> A district court may determine all issues, including the authority to condemn property and the assessment of damages, in any suit:
>
> > (1) in which this state, a political subdivision of this state, a person, an association of persons, or a corporation is a party; and
> >
> > (2) that involves a claim for property or for damages to property occupied by the party under the

---

[37] *See Kelo*, 545 U.S. at 489 (acknowledging that states may "impose 'public use' requirements that are stricter than the federal baseline"); *see KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 194–200 (Tex. 2019) (Blacklock, J., dissenting) (connecting the dissenting opinions in *Kelo* to the Texas constitutional amendments and describing new limitations on the takings clause as a "judicially administrable legal standard").

[38] Act of May 6, 2011, 82d Leg., R.S., ch. 81, § 19, 2011 Tex. Gen. Laws 354, 361–63 (codified at Tex. Prop. Code §§ 21.101–.103).

[39] *Id.*

party's eminent domain authority or for an injunction to prevent the party from entering or using the property under the party's eminent domain authority.[40]

Subchapter E, Section 21.101 provides that a person whose property is acquired "through eminent domain," as well as that person's successors and assigns, are "entitled to repurchase the property" under certain conditions:

(1) the public use for which the property was acquired through eminent domain is canceled before the property is used for that public use;

(2) no actual progress is made toward the public use for which the property was acquired between the date of acquisition and the 10th anniversary of that date;

(3) the property becomes unnecessary for the public use for which the property was acquired, or a substantially similar public use, before the 10th anniversary of the date of acquisition;

(4) the entity that acquired the property through eminent domain:

   (A) has an obligation to pay ad valorem taxes on the acquired property;

   (B) has received a tax bill from the taxing authority for the ad valorem taxes on the acquired property; and

   (C) has failed to pay any ad valorem taxes on the acquired property before the third anniversary of the date on which the unpaid taxes became due; or

(5) the entity:

---

[40] Tex. Prop. Code § 21.003.

(A) acquired through eminent domain a fee simple interest in the property;

(B) has an obligation to pay ad valorem taxes on the acquired property;

(C) has received a tax bill from the taxing authority for the ad valorem taxes on the acquired property; and

(D) has failed to pay any ad valorem taxes on the acquired property before the third anniversary of the date on which the unpaid taxes became due.[41]

Finally, "[a] district court may determine all issues in any suit regarding the repurchase of a real property interest acquired through eminent domain."[42]

The State contends that these statutes confer jurisdiction over repurchase claims but grant no waiver of immunity to pursue them against the State. Despite the recent constitutional amendments, the State argues that repurchase is a statutory right not found in the Constitution. JRJ responds that the statute authorizes relief associated with a waiver of immunity—such as damages—for "all issues" in which the State occupies property "under its eminent domain authority."[43] Such a reading is consistent with the Constitution's authorization that the State offer a repurchase price valued as of the time of acquisition.

We generally find waiver "if the Legislature requires that the [governmental] entity be joined in a lawsuit even though the entity

---

[41] *Id.* § 21.101(a).

[42] *Id.* § 21.101(c).

[43] *Id.* § 21.003.

14

would otherwise be immune from suit."[44] We also consider whether the Legislature "provided an objective limitation on the governmental entity's potential liability" as well as "whether the statutory provisions would serve any purpose absent a waiver of immunity."[45]

We conclude that the State is not immune from repurchase claims.[46] First, the Legislature nested the repurchase statute within existing law governing eminent domain—proceedings from which the State enjoys no immunity.[47] Chapter 21 permits district courts to "determine all issues . . . in any suit . . . in which this state . . . is a party" and that involves "a claim for property . . . occupied by the party under the party's eminent domain authority."[48] The repurchase statute implements the 2009 constitutional amendments limiting public use, just as an inverse-condemnation claim fulfills the adequate-compensation guarantee. As we reasoned in *Hidalgo County*

[44] *Hillman v. Nueces County*, 579 S.W.3d 354, 360 (Tex. 2019) (alteration in original) (quoting *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009)).

[45] *Id.* (quoting *Harris Cnty. Hosp. Dist.*, 283 S.W.3d at 844).

[46] *See Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 435 (Tex. 2016) ("The judiciary determines the applicability of immunity in the first instance and delineates its boundaries. If immunity is applicable, *then* the judiciary defers to the legislature to waive such immunity." (citation omitted)).

[47] *See Stewart*, 361 S.W.3d at 568 ("[T]he Takings Clause is self-executing . . . it alone authorizes suit, regardless of whether the Legislature has statutorily provided for it.").

[48] Tex. Prop. Code § 21.003. We also presume that the Legislature acted with knowledge of our decision in *Steele* twenty years earlier, in which we held that no immunity exists against inverse condemnation claims. 603 S.W.2d at 791; *see In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) ("We presume the Legislature is aware of relevant case law when it enacts or modifies statutes.").

*Water Improvement District No. 3 v. Hidalgo County Irrigation District No. 1*,[49] the government is not immune from claims on the "back end" after it takes property without compensation.[50] Similarly, the government is not immune from claims involving condemned property no longer intended to benefit the public.[51] The statute cannot be read consistently with the Constitution in the absence of a waiver.[52]

The 2011 statutory amendments make clear that the Legislature anticipated the State as a defendant in suits to vindicate repurchase rights. It expressly authorized district courts to "determine all issues in *any suit* regarding the repurchase."[53] The State and the dissent reduce this to jurisdictional language.[54] However, the authorization to "determine all issues" does not only appear in the jurisdictional

---

[49] 669 S.W.3d 178 (Tex. 2023).

[50] *Id.* at 187.

[51] We have not been asked to determine whether the public-use requirement is self-executing. The relationship between the statutory repurchase right, the public-use requirement, inverse condemnation claims, and eminent domain proceedings forms the background against which the Legislature acted.

[52] *See Oncor Elec. Delivery Co. v. Dall. Area Rapid Transit*, 369 S.W.3d 845, 850 (Tex. 2012) ("[W]e must look at whether a statute makes any sense if immunity is not waived." (quoting *Fernandez*, 28 S.W.3d at 6)).

[53] Tex. Prop. Code § 21.101(c) (emphasis added).

[54] The dissent's reliance on *In re Nestle USA*, 359 S.W.3d 207 (Tex. 2012), is misplaced. *Post* at 16 (Hawkins, J., dissenting). The statutes involved in that case granted "exclusive and original *jurisdiction*" to hear taxpayer suits. *Nestle USA*, 359 S.W.3d at 209–10 (emphasis added). In contrast, Subchapter E authorizes the courts to "determine all issues" in repurchase claims, and Chapter 21 also expressly contemplates that courts may assess damages against the State. *See* Tex. Prop. Code §§ 21.003, .101(c).

subchapter; it also appears in Subchapter E—the right of repurchase— without jurisdictional limitation.[55] In amending a chapter in which the State enjoys no immunity, while mindful of the People's desire for heightened scrutiny of the public use requirement, the Legislature expressly authorized property owners to seek judicial vindication of the public use limitation in claims against the State.

Further, Chapter 21 objectively limits the government's liability for repurchase claims. Mirroring the Constitution, Section 21.103(b) provides that "the [condemning] entity shall offer to sell the property interest . . . for the price paid to the owner . . . at the time the entity acquired the property through eminent domain."[56] The funds the State expended to acquire the land are returned to the State, and the property is returned to the landowners upon payment of those funds.

What the State loses is any appreciation in the property's value between the time it was condemned and the repurchase.[57] But under the constitutional and statutory framework, the *State* was never entitled to profit from its eminent domain authority. The People amended the Constitution to permit the *landowner* to recover the loss of that profit, with supporters aiming to minimize speculative overuse of condemnation authority.[58] Any liability the repurchase right creates for the government is both limited and purposeful.

---

[55] *See* Tex. Prop. Code §§ 21.003, .101(c).

[56] Tex. Prop. Code § 21.103(b).

[57] JRJ also seeks damages, fees, and costs; whether it is entitled to any of these in a repurchase suit is far from certain.

[58] *See* Tex. Const. art. III, § 52j; Tex. Leg. Council, Analyses of Proposed Constitutional Amendments 51 (2007) (reporting supporters as arguing "[i]f

17

Finally, the repurchase right serves virtually no purpose absent a waiver of immunity, distinguishing this case from *Texas Department of Transportation v. City of Sunset Valley*.[59] There, we concluded that a provision requiring compensation for intergovernmental property transfers "provides a mechanism" for "budgetary protection" between and among government agencies but does not waive immunity to permit one governmental unit to obtain a money judgment against another.[60] Much like we reasoned in *Oncor Electric Delivery Co. v. Dallas Area Rapid Transit* in connection with another statute, "[t]he obvious purpose of [the statute]—indeed, its only apparent purpose—is to provide for rights that can actually be exercised."[61] The subchapter "creating specific, restricted 'rights'" for a landowner to repurchase their formerly condemned property "cannot reasonably be read to tacitly condition their exercise on a separate waiver of immunity" when it is directly linked to a constitutional limit on the State's power.[62]

---

the amendment results in giving certain property owners a windfall from any increase in the value of the property, the amendment is still fair because it would be a disincentive to governmental entities taking property they may not need and may indirectly reduce instances in which property is taken through eminent domain").

[59] 146 S.W.3d 637 (Tex. 2004).

[60] *Id.* at 643–44.

[61] 369 S.W.3d at 850.

[62] *Id.* Section 21.102 supports this reading by providing that once condemned property becomes surplus, the condemning entity "shall" contact the original owner by certified mail and inform the owner of its right to repurchase the property.

The State and the dissent contend that the repurchase statute is effective even if the State is immune because some private entities exercise condemnation authority.[63] Initially, however, the repurchase statute applied only to "property . . . acquired by a governmental entity"—not by private entities.[64] It was not until 2011 that the Legislature *expanded* the right to allow landowners to repurchase land condemned by private entities.[65] The Legislature's later expansion did not disavow the repurchase right first granted to curb *State* overreach in exercising its constitutionally prescribed authority.

Our approach coheres with our reasoning in *Texas A&M University–Kingsville v. Lawson*.[66] In that case, the statute governing the underlying claim provided a legislative waiver of immunity.[67] The parties settled, but the plaintiff later sued for breach of the settlement agreement.[68] In rejecting the university's immunity defense, a plurality of the Court held that "a governmental entity that settles a suit in which it lacks immunity cannot claim immunity in a subsequent suit to enforce the settlement."[69] Similarly, the Landowners in this case ceded their

---

[63] *Post* at 23–24 (Hawkins, J., dissenting).

[64] Act of June 1, 2003, 78th Leg., R.S., ch. 1307, § 2, 2003 Tex. Gen. Laws 4739, 4739.

[65] Act of May 6, 2011, 82d Leg., R.S., ch. 81, § 19, 2011 Tex. Gen. Laws 354, 361.

[66] 87 S.W.3d 518 (Tex. 2002) (plurality op.).

[67] *Id.* at 518–19, 521.

[68] *Id.* at 519.

[69] *Hughes v. Tom Green County*, 573 S.W.3d 212, 214 (Tex. 2019) (citing *Lawson*, 87 S.W.3d at 522–23).

property to the State's eminent domain power—a power subject to a public-use limitation. This limitation carries forward in the same way a waiver of immunity from the underlying claim carried forward in *Lawson*.

We cannot ignore Chapter 21's constitutional overlay, requiring that the State take property only for public use.[70] Over time, this matter became one of such importance that the People twice amended our state's Constitution.[71] We hold the State is not immune from Chapter 21 repurchase claims.[72]

## III

We next turn to whether JRJ alleges a repurchase claim satisfying Chapter 21's criteria. The State first contends that it did not acquire the property "through eminent domain," as required by

---

[70] Tex. Const. art. I, § 17(a).

[71] *See In re Dallas County*, 697 S.W.3d 142, 158 (Tex. 2024) ("'Our guiding principle when interpreting the Texas Constitution is to give effect to the intent of the voters who adopted it,' which requires sensitivity to the full context of the constitutional language and history." (internal citation omitted) (quoting *Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 594 S.W.3d 309, 313 (Tex. 2020))). Relying on precedent from 1897, the dissent contends that the State need honor the public use requirement only at the moment of condemnation. *Post* at 18–20 (Hawkins, J., dissenting) (citing *City of San Antonio v. Grandjean*, 91 Tex. 430, 434 (1897)). This ignores the obligations found in the recent amendments to the Texas Constitution limiting State power with respect to public use.

[72] Our holding in this case does not authorize repurchase suits outside Chapter 21's strictures. *See City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011) ("The constitution waives immunity for suits brought under the Takings Clause, but this does not mean that a constitutional suit may be brought in every instance. . . . When the Legislature creates [an eminent domain] statutory procedure, recourse may be had to a constitutional suit only where the procedure proves inadequate . . . ." (citation omitted)).

20

Chapter 21, because it later settled upon the value of the condemned property with the Landowners. The State next contends that Chapter 21 does not apply when only a portion of the property is no longer necessary for public use. We address these arguments in turn.

**A**

A right of repurchase belongs to "[a] person from whom a real property interest is acquired by an entity *through eminent domain for a public use*."[73] The State concedes that it acquired the property for public use, and it does not dispute that JRJ meets one of the five predicates for seeking repurchase. The State argues, however, that its acquisition was not "through eminent domain," as Chapter 21 requires, because the Landowners settled with the State on a value for the land after the State filed suit.

"Through" means "by way of"; "passage into and out of a treatment, handling, or process"; or is "a function word to indicate means, agency, or intermediacy."[74] "Eminent domain" is "[t]he inherent power of a governmental entity to take privately owned property, esp[ecially] land, and convert it to public use, subject to reasonable compensation for the taking."[75] The logical reading of "through eminent

---

[73] Tex. Prop. Code § 21.101(a) (emphasis added). The statute's extension of the repurchase right to a landowner's assigns addresses the State's argument in its jurisdictional plea that JRJ lacks a justiciable interest.

[74] *Through*, Webster's Third New International Dictionary Unabridged (Philip Babcock Gove ed., 2021); *Through*, Merriam-Webster, https://www.merriam-webster.com/dictionary/through (last visited June 5, 2026).

[75] *Eminent Domain*, Black's Law Dictionary (12th ed. 2024).

domain" is "*by means of* the State's power to take private property for public use."[76]

The State and the dissent posit that property is not acquired "through eminent domain" absent a final judgment adjudicating the property's value.[77] When analyzing statutes, we presume the Legislature chose its words with care and that "words not included were purposefully omitted."[78] The State's interpretation essentially swaps the language the Legislature uses—"eminent domain"—for language it did not use—"condemnation judgment."[79] Eminent domain is not a process that the State "goes through."[80] Rather, eminent domain is the State's *power*.

A settlement as to the property's value does not alter the State's acquisition of it "through eminent domain." The deed in this case acknowledges the Landowners conveyed the property as a result of "ED proceedings." The Landowners did not sell the property in an arm's length transaction on the open market; rather, the Landowners surrendered their property in concession to the State's coercive power.

---

[76] *See Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016) ("If an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the statutory scheme.").

[77] *Post* at 25–27 (Hawkins, J., dissenting).

[78] *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

[79] *See KMS Retail Rowlett*, 593 S.W.3d at 183 ("We must enforce the statute 'as written' and 'refrain from rewriting text that lawmakers chose.'" (quoting *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (plurality op.))).

[80] *Post* at 26 (Hawkins, J., dissenting).

22

Once the State invokes its eminent domain power, landowners need not proceed to a judgment as to adequate compensation to preserve their repurchase right.[81] The State's forced transfer via a condemnation suit is an exercise of its power to obtain the property "through eminent domain."[82]

**B**

The State next contends that the right of repurchase does not apply when only a portion of the condemned property is no longer necessary for public use. Under Section 21.101(a), a landowner is "entitled to repurchase the property."[83] The phrase "the property" is used consistently throughout Subchapter E to refer to the "real property interest . . . acquired by an entity through eminent domain."[84] The State observes that Section 21.101(a) does not expressly permit the repurchase of a portion of the property. Neither, however, does the statute reference "the *entire* property." A portion of property is accurately described as "property."[85] We decline to adopt an interpretation that limits the right in a manner the Legislature did not indicate.

---

[81] *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997) (emphasizing that Texas law favors settlement).

[82] We do not address whether other kinds of State action sufficiently invoke the State's eminent domain power.

[83] Tex. Prop. Code § 21.101(a).

[84] *See, e.g.*, *id.*; *id.* §§ 21.102, .1021, .103.

[85] *See Property*, Black's Law Dictionary (12th ed. 2024) (defining "real property" as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land").

23

This case illustrates the repurchase right in practice. The Department used ninety-seven percent of the condemned property for a highway project. By the Department's admission, the remaining three percent of the property became surplus within ten years of its acquisition.[86] Once the State identifies that condemned property is no longer required for public use—as it did in this case—the State must notify the landowner of its repurchase right.[87]

The State argues that it is difficult to calculate a price for a partial repurchase. We are not persuaded. The State offered to sell the surplus portion in this case at its current fair market value, indicating it is capable of valuation.[88] Section 21.103(b) provides the rule for determining the repurchase price: "the price paid to the owner by the entity at the time the entity acquired the property through eminent domain."[89] The State can apply this statutory directive to calculate an offer price on portions of land it deems unnecessary for public use.

---

[86] A repurchase right exists if "the property becomes unnecessary for the public use for which the property was acquired, or a substantially similar public use, before the 10th anniversary of the date of acquisition." Tex. Prop. Code § 21.101(a)(3).

[87] *Id.* § 21.102(3).

[88] The dissent refers to the State's offer to sell the property at today's fair market value. *Post* at 17–18 (Hawkins, J., dissenting). The State's offer aligns with the statute before the post-*Kelo* constitutional amendments rather than the current version, which requires it to be valued at the time the State takes the property. *Compare* Act of June 1, 2003, 78th Leg., R.S., ch. 1307, § 2, sec. 21.103(b), 2003 Tex. Gen. Laws 4739, 4740 ("[T]he governmental entity shall offer to sell the property interest to the person for the *fair market value* of the property at the time the public use was canceled." (emphasis added)), *with* Tex. Prop. Code § 21.103(b).

[89] Tex. Prop. Code § 21.103(b).

# IV

Finally, we address the trial court's jurisdiction. Chapter 21 provides that "[d]istrict courts and county courts at law have concurrent jurisdiction in eminent domain cases."[90] The State contends that a repurchase claim is not an "eminent domain case."

Article V of the Texas Constitution vests judicial power in various courts, including this Court, district courts, county courts, and "such other courts as may be provided by law."[91] "County courts at law are among 'such other courts as may be provided by law.'"[92] The Legislature expressly granted such courts concurrent jurisdiction in eminent domain cases.[93] In placing repurchase claims within Chapter 21, and in granting county courts at law jurisdiction over "eminent domain cases," the Legislature made it plain: first, a repurchase claim is a species of an eminent domain case; and second, county courts at law have concurrent jurisdiction to hear such a case. Chapter 21 does not parse jurisdiction depending on the types of claims found within it. Instead, Sections 21.003 and 21.101(c) grant power to the district courts, each stating that "[a] district court may determine all issues" in suits Chapter 21 governs.[94] Section 21.001 then grants county courts at law

---

[90] *Id.* § 21.001.

[91] Tex. Const. art. V, § 1.

[92] *Ditech Servicing, LLC v. Perez*, 669 S.W.3d 188, 190 (Tex. 2023) (quoting Tex. Const. art. V, § 1).

[93] Tex. Prop. Code § 21.001.

[94] *Id.* §§ 21.003, .101(c).

commensurate power.[95] Together, these provisions vest district courts and county courts at law with concurrent jurisdiction over eminent domain cases and to hear and decide "all issues" pertaining to them.[96]

*　　*　　*

The State has no immunity from Chapter 21 claims to repurchase condemned property no longer necessary for public use. The State's exercise of eminent domain power in a condemnation suit is property acquired "through eminent domain," regardless of the parties' later agreement upon the value of the property taken. Further, Chapter 21 permits the repurchase of a portion of condemned property no longer necessary for public use. Finally, district courts and county courts at law have concurrent jurisdiction to hear repurchase claims if other statutory requirements are met. Accordingly, we affirm the judgment of the court of appeals and remand the case to the trial court for further proceedings.

Jane N. Bland
Justice

**OPINION DELIVERED:** June 12, 2026

---

[95] *See Brazos River Conservation & Reclamation Dist. v. Reese*, 146 S.W.2d 519, 524–25 (Tex. App.—Eastland 1940, no writ) (noting that the county court was historically the exclusive tribunal for initiating and executing condemnation proceedings and listing Texas precedent).

[96] Tex. Prop. Code §§ 21.003, .101(c). Harris County Civil Courts at Law have a jurisdictional limit requiring that the amount in controversy not exceed $325,000. Tex. Gov't Code § 25.1032(c). The parties may address the applicability of this statute on remand.